CERVECERÍA INDIA, INC., Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. 11701. Submitted June 3, 1957.—Decided April 21, 1958.

*J. B. Fernández Badillo, Attorney General (José Trías Monge, Ex-Attorney General, on the brief), and José A. Mayoral, Assistant Attorney General for appellant. J. Alemañy Sosa and E. Alemañy Fernández for appellee.*

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

Cervecería India, Inc. imported and installed in its factory certain instruments (called productimeters) which are used for counting the number of bottles as they are filled and the beer bottles finally packed in boxes. It claimed exemption from the payment of excise taxes on such equipment, but the Secretary of the Treasury denied its request and demanded payment of the tax. Without paying the tax or filing proper claim for refund, the taxpayer sued the Secretary of the Treasury alleging that the productimeters are exempt under the provisions of § 16-B of the Internal Revenue Act (13 L.P.R.A. § 1070), and urging a court ruling to that effect. The Superior Court held that it had jurisdiction to take cognizance of the case and that the tax exemption provided in § 16-B, *supra*, was applicable to productimeters. It decreed that ". . . the Secretary of the Treasury shall refrain from collecting from the plaintiff the excise taxes on the equipment in litigation . . . ." We believe that that judgment should be reversed because, since the issue was the assessment and collection of excise taxes, the taxpayer was bound to pay them first and then litigate through a claim for refund.

Section 13 (*a*) 2 of the Judiciary Act of 1952, establishes in general terms the jurisdiction of the Superior Court in tax cases. It provides that that court shall take cogni-

zance "Of all cases, actions, proceedings or extraordinary legal remedies in connection with or affecting the levy, collection and payment of all kinds of taxes, including property taxes, inheritance and gift taxes, income taxes, unfair profiteering taxes, social insurance taxes, excises, license taxes, and any other taxes or imposts, as well as of claims for taxes collected by unlawful procedure or which voluntarily or without notice from the Secretary of the Treasury were paid unduly or in excess, the reimbursement of which is authorized by law and is refused by the Secretary of the Treasury." 4 L.P.R.A. § 121(a)2. However, that Act did not repeal the procedure applicable in tax cases nor the jurisdiction requirements entitling the Superior Court to take cognizance of such suits. This appears clearly from the report of the Drafting Committee on the Judiciary Act of 1952. Referring expressly to § 13(a)2 above copied, it points out that the scope of the same is the following: "The Superior Court hereafter replaces the separately constituted Tax Court, which this Act also abolishes, as the appropriate forum for all appeals to the courts from rulings, decisions or orders relating to taxation. Sections 1, 2 and 7–21 of Act No. 328 of May 13, 1949 are thus repealed, as concerned with matters of administration and constitution of that Court. The procedure applicable to such cases and the requirements for review by the court that a bond must be posted, and that payment must be made in full when appeal to the Supreme Court is sought, obtain as heretofore, however. All tax cases are to be brought in the Superior Court irrespective of the amount in controversy since the provisions of Sections 13(a)5 and 18(a)2 do not apply to these matters." 4 L.P.R.A. pp. 754–55.

Briefly, the jurisdiction or competency in tax matters which the Legislature vested in the Superior Court in 1952 is identical with that of the former Tax Court created by Act No. 328 of 1949 (Sess. Laws, p. 996). All the conditions provided by the Commonwealth in giving consent to be sued in tax matters remained in force after the approval of the

Judiciary Act of 1952. However, which conditions govern suits in which the issue is the assessment and collection of excise taxes?

 Until the creation of the first Tax Court by Act No. 169 of May 15, 1943 (Sess. Laws, p. 600), the only way of filing a tax suit was by paying *under protest* and then suing the Treasurer for a refund of the tax. In fact, under Act No. 8 of April 19, 1927 (Sess. Laws, p. 122) and Act No. 17 of November 21, 1941 (Sp. Sess. Laws, p. 54), if the taxpayer believed that he did not owe certain excise taxes and wished to litigate, he was bound to pay the same under protest and to set forth on the reverse of the receipt the grounds of his protest and challenge. Within the term of 30 days from the date of payment he could file a complaint against the Treasurer of Puerto Rico in the corresponding district court for the refund of the amount protested. The complaint could not be for any other amount or on any other grounds than those alleged in his protest when making payment. See *Monge* v. *Tax Court*, 68 P.R.R. 594 (1948).

After the approval of Act No. 169 of 1943, the taxpayer had two remedies to litigate excise taxes: (1) to pay under protest and to sue for refund in the Tax Court; and (2) to appeal to the Tax Court from a denial for refund of the Treasurer. If demand was made to pay the excise taxes, the taxpayer could elect between the two remedies, but if the Treasurer made no such demand the only remedy available was to appeal to the Tax Court from the administrative decision of the Treasurer disallowing the refund. In both cases it was absolutely necessary to pay the excise taxes before being able to litigate. See *Gerardino* v. *Tax Court*, 68 P.R.R. 206, 215–16, 219–22 (1948).

In 1949, the Legislature did away with the first of the two procedures above mentioned—*payment under protest and claim for refund*—by repealing Act No. 8 of 1927 by virtue of Act No. 229 of May 10, 1949 (Sess. Laws, p. 704). On the other hand, it left in force, with exclusive character, the second

procedure for litigating excise taxes by incorporating it in a general law which grants the right to obtain a refund or credit, with interest thereon, of any kind of taxes (including excise taxes) paid or collected, unlawfully or unduly, or in excess of the amount due. We refer to Act No. 232 of May 10, 1949 (Sess. Laws, p. 720), which is still in force. As is well known, it grants to the taxpayer a term of four years from the date of payment of the excise tax to file an application for refund with the Secretary of the Treasury, and if such application is denied in whole or in part " . . . the taxpayer may appeal from such denial to the Tax Court of Puerto Rico [now Superior Court] in the manner, within the term, and upon compliance with the requirements provided by the law." 13 L.P.R.A. § 261.

A uniform procedure to appeal to the Tax Court (now Superior Court) was simultaneously established by Act No. 235 of May 10, 1949 (Sess. Laws, p. 732). The purpose of this Act was to regulate exhaustively and coherently the different remedies by which the taxpayer could appeal to that court. Section 2 (13 L.P.R.A. § 282) provides the exact procedure for taking appeals from any determination of the Secretary of the Treasury in connection with (1) income tax; (2) tax on unfair profiteering; (3) property tax; (4) inheritance and gift tax; (5) social security tax; and, lastly, (6) reimbursement of taxes. Why is no mention made of excise-tax cases? In our opinion, there is only one answer: because the only procedure available for litigating excise taxes is by review of a determination of the Secretary of the Treasury refusing to grant a petition for reimbursement of such taxes on the authority of Act No. 232 of 1949. Thus, the sixth remedy mentioned in § 2, *supra*, under the title "reimbursement of taxes," is sufficient to include all excise-tax cases.[1]

---

[1] Section 2 of Act No. 235 of 1949 provides in its pertinent part as follows:

"Taxpayers' Remedies:

The provisions of § 2 which we have analyzed agree with the provisions of § 3 of Act No. 328 of May 13, 1949, which created the second Tax Court of Puerto Rico. 13 L.P.R.A. § 286. The aforesaid § 3 fixes a uniform period of thirty days to file any complaint in the Tax Court (now Superior Court) as of the date of the notice served by the Secretary of the Treasury on the claimant person or entity ". . . in any of the following cases: (1) taxes on real or personal property; (2) inheritance or gift taxes; (3) income taxes; (4) unfair profiteering taxes; (5) social insurance taxes; (6) denials of reimbursements authorized by law of any kind of taxes paid unduly or in excess, or unlawfully collected for any other reason." It is obvious that no mention of excise-tax cases is made in this Act either. And the reason is the one pointed out hereinbefore: the sixth class of cases ("denials of reimbursements authorized by law") necessarily includes all excise-tax cases. The taxpayer must always pay first and litigate later.

■ It is well to point out also that since 1945, appeals may be taken from a denial for refund of excise taxes only by the person or entity which has actually suffered the burden of

---

"A.—Appeal from Decisions of the Treasurer of Puerto Rico.—Whenever a taxpayer disagrees with a decision notified to him by the Treasurer of Puerto Rico and is by law entitled to appeal therefrom to the Tax Court of Puerto Rico, he shall do so in the manner, within the term, and upon compliance with the requirements herein provided, as follows:

"1. Income Tax. . . .
"2. Tax Unfair Profiteering. . . .
"3. Property Tax. . . .
"4. Inheritance and Gift Tax. . . .
"5. Social Security Tax. . . .
"6. Reimbursement of Taxes.—From a decision of the Treasurer of Puerto Rico denying the reimbursement of any tax, by filing complaint in the Tax Court of Puerto Rico, in the manner provided for by the Act creating said court, within the term of thirty (30) days from the date of mailing the notice of the Treasurer of Puerto Rico denying the petition for reimbursement of the taxes, which term shall be considered of jurisdictional character.

"B.—Other Taxpayers' Remedies.—Such special or extraordinary remedies to which taxpayers may be entitled in connection with any tax, shall be prosecuted in the Tax Court according to the laws applicable thereto."

paying the same, and that "an allegation in this sense and the evidence thereof at the proper time shall be considered as jurisdiction requirements." Act No. 137 of May 9, 1945 (Sess. Laws, p. 462) established those conditions specifically for the refund of excise or license taxes. See *Standard Com. Tobacco Co., Inc.* v. *Tax Court*, 71 P.R.R. 701 (1950). Later they were made applicable to refund of all kinds of taxes by the approval of § 2 of Act No. 328 of May 13, 1949, and they are still in force, inasmuch as § 13 (*a*) 2 of the Judiciary Act of 1952 does not repeal any of the requirements provided by prior laws enabling the Superior Court to take cognizance of tax cases. The origin of these "jurisdiction requirements" and their operation at the present show that it is necessary to pay the excise tax before being able to litigate the question of whether or not they are due.

In all cases in which the taxpayer is permitted to litigate a tax without paying first, the Legislature of Puerto Rico has imposed certain conditions to guarantee the payment of the tax and to insure the efficient collection of taxes. The Government has always tried to prevent tax suits from becoming an obstacle to the collection of revenues which are necessary for its proper functioning. Regarding income taxes, the giving of a bond is required normally as a condition precedent for appealing to the Superior Court from a final determination of a deficiency. And if an appeal is taken from a judgment of the Superior Court determining an income-tax deficiency, the payment of the full amount of the deficiency is normally required as a condition precedent for the Supreme Court to hear the appeal on the merits. 13 L.P.R.A. Cum. Supp. § 3272 (1957). In the case of property tax, it is necessary to pay that portion thereof with which the taxpayer is agreed, and there also exists a preferred lien on the property in favor of the State. Regarding inheritance and gift tax, a preferred lien is also imposed and, in addition, the alienation of the inherited property is prohibited, except for the purpose of raising sufficient funds for the payment of the

taxes, until the payment thereof is duly proved. It should be noted that in excise-tax cases the Act does not require a bond to litigate before the Superior Court. Nor does it impose other *conditions to litigate* in order to guarantee the efficient and orderly collection of those taxes. It is logical, therefore, that in excise-tax cases the taxpayer should be permitted to resort only to the procedure of refund.

*Referring to all kinds of taxes,* § 3 of Act No. 328 of 1949, provides that: ". . . the filing of the complaint in the Tax Court shall not affect or impair the right of the Treasurer of Puerto Rico to collect the taxes by the procedure authorized by law, unless the Tax Court, upon motion of the taxpayer and after summoning the Treasurer of Puerto Rico, stays the collection of the tax at issue, upon the bonding, to its entire satisfaction, of the tax in controversy, including interest and penalties . . . ." That section provides that: ". . . the authorization to file this bond, as well as the fixing of the amount thereof, shall be a discretional and exclusive faculty of the court, having in mind in each case the facts and circumstances in its judgment concurring and affecting the interest both of the taxpayer and the Commonwealth of Puerto Rico." 13 L.P.R.A. § 286. But, in our opinion, the Legislature considered that these provisions are not sufficient to protect the public treasury against the risk that a multiplicity of tax suits may arise which would prevent the efficient and orderly collection of taxes. This is evidenced by the fact that, notwithstanding the provisions of § 3, *supra*, the giving of a bond in income-tax cases, *as a jurisdiction requirement*, is still in force at present, except in certain unusual cases. 13 L.P.R.A. Cum. Supp. § 3272 (1957). Undoubtedly, by attachment or threat of attachment the Secretary of the Treasury could theoretically compel every litigant in each case to give a bond. But in practice this would entail an administrative job which could hardly be carried out. And we cannot overlook the

fact that in Puerto Rico about one-third of the total amount of the revenues of the Government is derived from excise tax.[2]

There is no legal provision whatever permitting an exception to be made when it is alleged that the article on which the excise tax is levied is exempt from all kinds of taxes. In *Cafeteros de P. R.* v. *Treasurer*, 74 P.R.R. 704 (1953), we held that the adequate remedy to obtain a court ruling as to the propriety of the assessment and collection of certain excise taxes was to pay the tax and then make a claim for refund, despite the fact that the plaintiff alleged that it was not a taxpayer subject to the ambit of the law. We repeat here what we said there at p. 716: ". . . every claim that a tax is illegal involves the allegation that, as to a certain amount or as to certain items, at least, the petitioner is not a taxpayer. Every allegation of exemption, for example, involves the contention that a certain Act is not applicable to a plaintiff." This is nothing unusual. Actually, the procedure of refund has always been used in Puerto Rico in such cases where the taxpayer maintains that he does not owe excise taxes by reason of an exemption. See *Central Coloso* v. *Tax Court*, 70 P.R.R. 62 (1949); *Descartes, Treas.* v. *Tax Court*, 71 P.R.R. 440 (1950); *Cervecería India, Inc.* v. *Tax Court*, 71 P.R.R. 463 (1950); *Descartes, Treas.* v. *Tax Court*, 71 P.R.R. 479 (1950); *Pedro A. Pizá, Inc.* v. *Tax Court*, 72 P.R.R. 302 (1951); *Sucn. Serrallés* v. *Tax Court*, 73 P.R.R. 33 (1952); *Francis* v. *Tax Court*, 74 P.R.R. 18 (1952); *Fajardo Sugar Co.* v. *Secretary of the Treasury*, 76 P.R.R. 802 (1954); *Descartes, Treas.* v. *Tax Court; P. R. Aggregates, Int.*, 78 P.R.R. 83 (1955); and *Capó* v. *Tax Court; Sec. of the Treasury, Int.*, 78 P.R.R. 890 (1956).

---

[2] See Summary of the Budget, Fiscal Year 1957, p. 2, and Summary of the Budget, Fiscal Year 1958, p. 2 (both published by the Bureau of the Budget of the Commonwealth of Puerto Rico). See, also, the Fiscal Report to the Governor (1957), pp. 31–32, published by the Bureau of Economy and Statistics of the Planning Board.

The judgment appealed from will be reversed and another rendered instead dismissing the complaint for lack of jurisdiction.

Mr. Justice Pérez Pimentel dissented on the point of jurisdiction and concurs in the result on different grounds which he sets forth in the following opinion.

Mr. Justice Santana Becerra did not take part herein.

———

Separate opinion delivered by MR. JUSTICE PÉREZ PIMENTEL.

I dissent on the question of jurisdiction for the following reasons:

This is an appeal from a judgment of the Superior Court holding that some eight productimeters which were imported by Cervecería India, Inc. and installed in its beer factory for the purpose of counting the number of bottles as they are filled with beer and the beer bottles finally packed in boxes, were exempt from the payment of excise taxes under the provisions of § 16-B of the Internal Revenue Act and § 4 (a) of Excise Tax Regulation No. 69.

In the second error the Secretary of the Treasury, defendant-appellant herein, attacks the jurisdiction of the trial court to take cognizance of this case. He argues that the taxpayer did not comply with the jurisdiction requirement to pay the excise tax first and then litigate.[1]

———

[1] The appellant relies mainly on the cases of *Descartes, Treasurer v. Tax Court; Trigo Hnos., Inc., Int.*, 73 P.R.R. 282, and *Cafeteros de P. R. v. Treasurer*, 74 P.R.R. 704. In the latter case we held that in tax matter a remedy in equity, especially the remedy of injunction, does not lie if the alleged taxpayer has an adequate remedy in the ordinary course of the law, such as the payment of the tax followed by a claim for refund formulated in the former Tax Court. In that case the complaint was filed in the ordinary courts, which might well be considered as an action of injunction or one of declaratory judgment. The complaint was dismissed because the taxpayer had an adequate remedy in the ordinary course of the law. However, the facts in the present case are different and, for obvious reasons, the question which is now before us was not discussed either in the *Cafeteros de P. R.* case or in the *Trigo Hnos.* case. For the reasons stated in the course of this opinion, the cases *supra* are inapplicable to the case at bar.

He is wrong. The Judiciary Act in force (4 L.P.R.A. § 121), in defining the competency of the Superior Court, vested the same with power to take cognizance, among other matters, of "all cases, actions, proceedings or extraordinary legal remedies in connection with or affecting the levy, collection and payment of all kinds of taxes, including . . . excises . . . taxes and any other taxes or imposts as well as of claims for taxes collected by unlawful procedure or which voluntarily or without notice from the Secretary of the Treasury were paid unduly or in excess, the reimbursement of which is authorized by law and is refused by the Secretary of the Treasury." Therefore, in addition to vesting that court with jurisdiction to take cognizance of all cases, actions, proceedings, or extraordinary remedies *in connection with or affecting* the levy, collection, and payment of excise taxes, the Act conferred jurisdiction on the Superior Court, separately, to take cognizance of claims for refund denied by the Secretary of the Treasury.[2] This jurisdiction is exercised by the Superior Court subject to the established procedures at the time of the approval of the Judiciary Act, which continued in force by virtue of the saving clause contained in § 2, Art. I of the said Act.[3] Act No. 235 of May 10, 1949 (Sess.

---

[2] Art. IV, § 13, of the Judiciary Act provides in its pertinent part:

"The Superior Court shall have cognizance of the following matters:

"(a) Civil:

". . . . . . .

"2. Of all cases, actions, proceedings or extraordinary legal remedies in connection with or affecting the levy, collection and payment of all kinds of taxes, including property taxes, inheritance and gift taxes, income taxes, unfair profiteering taxes, social insurance taxes, excises, license taxes and any other taxes or imposts, as well as of claims for taxes collected by unlawful procedure or which voluntarily or without notice from the Secretary of the Treasury were paid unduly or in excess, the reimbursement of which is authorized by law and is refused by the Secretary of the Treasury."

[3] The said clause reads as follows:

". . . All existing provisions by statute or rules governing civil and criminal procedure and of evidence shall remain in effect until modified, supplemented, or amended by the Supreme Court in accordance with the Constitution of the Commonwealth of Puerto Rico." (4 L.P.R.A. § 2.)

Laws, p. 732) established the procedure for taking appeals to the former Tax Court from the determinations of the Treasurer of Puerto Rico on matters involving income tax, tax on unfair profiteering, property tax, inheritance and gift tax, social security tax, and reimbursement of taxes, providing for compliance with certain requirements to enable the court to assume jurisdiction in the matter. However, by express provision of that Act, the same "shall not be construed in the sense of extending or limiting the jurisdiction or competence of the Tax Court of Puerto Rico, nor the rights granted to or the obligations imposed by law on the taxpayers, The People of Puerto Rico, or the officials of The People of Puerto Rico." And by Act No. 328, approved May 13, 1949 (Sess. Laws, p. 996), the Tax Court of Puerto Rico was vested with jurisdiction similar to that of the present Superior Court in tax matters. The said Tax Court was expressly vested with exclusive jurisdiction to take cognizance of all cases, actions, proceedings, or special or extraordinary remedies in connection with or affecting the levy, collection, and payment of all kinds of taxes, including excises. Section 2, Act No. 328 of 1949. This Act also provided that this jurisdiction could not be pleaded before the court by any person until there had been a proper administrative decision on the issue in question on the part of the Treasurer, in accordance with law. And regarding refund of taxes and excises, it provided that only the person bearing the burden of the tax or excise at issue could take an appeal to the court, and that an allegation in this sense and the evidence thereof shall be considered as requirements for jurisdiction.

None of the laws which we have examined establishes as jurisdiction requirement the previous payment of the excise tax where the taxpayer, as here, alleges that the machinery on which the excise tax is collected is exempt from payment by provision of law.[4] Appellant points out the danger that

---

[4] See *Descartes, Treasurer* v. *Tax Court; Cerra, Int.*, 74 P.R.R. 531.

if a taxpayer were permitted to litigate an alleged tax exemption without first making payment, such action would create great uncertainty on the public treasury. He admits, however, that there are cases in which litigation is permitted without first paying the tax assessed; but he argues that in such cases the lawmaker has imposed, or there actually exist, conditions which guarantee the payment of the tax. Thus, for example, in the case of income tax the posting of a bond has been required; in the case of property tax the property itself constitutes a guaranty, since there exists a preferred lien in favor of the State; and in the case of inheritance tax there exist a preferred lien and also the prohibition to alienate the inherited property without first accrediting the payment of the tax. He maintains, further, that in excise-tax cases there is no guaranty whatever if the tax is not paid first and then litigated. On this last point we do not agree. We believe that the provisions of § 3 of Act No. 328 of 1949 are procedural in character and that they are still in force by virtue of the saving clause of the Judiciary Act to which reference has been made. The said Section provided that: ". . . the filing of the complaint in the Tax Court shall not affect or impair the right of the Treasurer of Puerto Rico to collect the taxes by the procedure authorized by law, unless the Tax Court, upon motion of the taxpayer and after summoning the Treasurer of Puerto Rico, stays the collection of the tax at issue, upon the bonding, to its entire satisfaction, of the tax in controversy, including interest and penalties." The said Section also provided that "The authorization to file this bond, as well as the fixing of the amount thereof, shall be a discretional and exclusive faculty of the court, having in mind in each case the facts and circumstances in its judgment concurring and affecting the interest both of the taxpayer and The People of Puerto Rico."

Therefore, in the light of these procedural provisions the danger pointed out by appellant is dispelled, since (1) the filing of the complaint in this case did not prevent the Sec-

retary of the Treasury from collecting the excise tax through the procedures authorized by law, and (2) the lower court had discretion to stay the collection of those excises if in its opinion such action would not affect the interest of the Commonwealth, and to require a bond, thereby eliminating the danger of the lack of guaranty.

On the other hand, it would not be entirely correct to affirm that the collection of excise taxes is devoid of the guarantees provided by law for the collection of other kinds of taxes. The *manufacturers* of taxable articles are bound to give a bond in favor of the Commonwealth of Puerto Rico to secure the payment of the tax and penalties. The *dealers* who have in their possession taxable articles on which the taxes have not been paid are also bound to give a similar bond. 13 L.P.R.A. § 4070. In the case of articles introduced in Puerto Rico other than by mail or personal arrival, the tax must be paid before the taxpayer takes possession of the article. 13 L.P.R.A. § 4060. To this end, the Secretary of the Treasury is empowered to authorize and regulate the establishment of bonded warehouses, public or private, to be used exclusively for storing those articles which are taxed by law and on which the tax has not been paid. 13 L.P.R.A. § § 4071 and 4077 (*i*). Furthermore, no maritime, aerial, or terrestrial carrier, nor any warehouseman or depositary having custody of taxable articles may deliver the same to the consignee or person properly claiming the same, unless a certificate is presented to him from the Secretary of the Treasury authorizing the delivery of such merchandise. Anyone of them who violates this provision commits an offense and is also bound to pay the tax on such merchandise, including surcharges, interest, administrative fines, etc. 13 L.P.R.A. § 4071. As to automobiles which are introduced in Puerto Rico, there is the additional guaranty of nonissuance of a license or plate until proof of tax payment is presented. 13 L.P.R.A. § 4075 (*b*). Regarding taxable operations such as public shows, winnings in Pools, Pari-Mutuels, etc., and

any other gaming in racing places, the law provides withholding agents to insure the payment of the tax. 13 L.P.R.A. § 4061. As to occupations subject to license, it is obvious that if the tax is not paid in advance such licenses are not issued. There remain the articles introduced by mail or personally. In these cases there does not exist a guaranty as in the other cases mentioned above. However, if the taxpayer refuses to pay the tax thereon, the Secretary of the Treasury has no remedy but to enforce its collection, through the procedures provided by law, by attaching summarily or otherwise property of the taxpayer. However, the Secretary of the Treasury is not prevented from taking such action because of the fact that the taxpayer has filed in court a proceeding attacking the validity of the collection of the excise tax. Furthermore, it is not a majority, not even a substantial number, of the taxpayers who resort to the courts to litigate the validity or legality of the taxes collected by the Secretary of the Treasury.

The opinion of the majority maintains that Act No. 235 of May 10, 1949 established a uniform procedure for resorting to the Tax Court (now Superior Court), and that the purpose of that Act was to regulate exhaustively and coherently the different proceedings which the taxpayers may file in that court. It concludes that since that Act made no provision for excise-tax cases, the only procedure to litigate such taxes is to pay them and to request a refund and resort to the court in the event of denial. By judicial fiat the majority opinion limits the proceedings and remedies available to the taxpayers to those expressly provided by Act No. 235 *supra*. In this manner it limits the jurisdiction or competency of the Tax Court (now Superior Court) in utter disregard of the provisions of Act No. 235, to the effect that said Act "shall not be construed in the sense of extending or limiting the jurisdiction or competence of the Tax Court of Puerto Rico . . . ." And, as we have already seen, by Act No. 328 of May 13, 1949 this Court was vested with jurisdic-

tion to take cognizance of all cases, actions, proceedings, or special or extraordinary remedies in connection with or affecting the levy, collection, and payment of all kinds of taxes, including excises. Thus, the jurisdiction or competency of the Tax Court (now Superior Court) is not limited, as maintained by the majority, to the proceedings or remedies mentioned in Act No. 235, which truly are not as exhaustive as they allege. If the situation were such as maintained by the majority, it would be proper to ask, as one of many examples, what remedy does the taxpayer have, and what procedure does the law provide for resorting to the court whenever the Secretary of the Treasury unjustifiably refuses to recognize the establishment of a replacement fund? In settling precisely a controversy on a replacement fund, in *Descartes, Treasurer* v. *Tax Court; Cerra, Int.*, 74 P.R.R. 531, we rejected the doctrine which the majority now adopts.

Regarding the cases cited in the majority opinion to show that the refund procedure has always been used in Puerto Rico whenever the taxpayer alleges a tax exemption, it will suffice to say that the election of that procedure by the taxpayer does not lay down the law, and, furthermore, that the taxpayer ought to know that the refusal to pay the excises and the filing of a complaint claiming exemption do not prevent the Secretary of the Treasury from enforcing the collection of the excises through the procedures established by law. Perhaps, for this reason, the litigants in those cases elected to pay and thereafter request the refund.

We therefore believe that the Superior Court had competency and jurisdiction to take cognizance of this case. However, after an examination of the case on the merits we believe that the judgment appealed from should be reversed. Let us see.

The appellant maintains that the trial court erred in holding that the machinery introduced in Puerto Rico by the plaintiff-appellee is covered by the tax exemption established by § 16-B of the Internal Revenue Act, and in holding that

§ 4 (*a*) of Excise Tax Regulation No. 69 was applicable to such machinery.

Appellant is right. Section 16-B of the Internal Revenue Act (13 L.P.R.A. § 1070) provided, on the date in which the machinery or equipment was introduced in Puerto Rico, the following:

"There shall be exempt from the payment of the excises imposed by this subtitle all apparatus, machinery, or equipment that may be essential for the establishment and operation of industrial plants . . . *Provided, likewise,* That this being an exemption which covers the essential machinery for the establishment of industrial plant, it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with the raw material from the beginning of the manufacturing process until the completion thereof, but also *including the machinery, trucks, or hoisting units exclusively and permanently used in the transportation of raw material and semiprocessed articles on the premises of the industrial plant, as well as the equipment used in the packing and labeling of the product and in the preservation of the latter or of the raw material in the case of perishable articles;* but it shall not cover the machinery, apparatuses, equipment, or vehicles used in the administrative, distributional or commercial stage of the industry . . . ."

In implementing the foregoing provision, § 4 (*a*) of Excise Tax Regulation No. 69 provided:

"Section 4. There shall be considered as covered by the exemption:

"*a*. Mechanical precision instruments devoted to the physical control of manufacturing production, including platform scales, steelyards, weights, gages, and any other devices used to grade the proportions of the raw materials to be processed as well as to otherwise weigh, count or measure the finished product at the time of sacking or packing it."

The question to be determined is whether the producti-meters introduced in Puerto Rico and installed by the plaintiff-appellee in its beer factory is equipment "used in the packing and labeling of the product and in the preservation

of the latter in the case of perishable articles," in which case it would be exempt from the payment of excises.

The text of § 16-B of the Internal Revenue Act is clear in the sense that the machinery and equipment exempted is that which is *essential* for the establishment and operation of industrial plants, and that the exemption is applicable only to machinery of the factory stage of production of the industrial process having to do with the raw material from the beginning of the manufacturing process until the completion thereof. By express provision of that Section, also included in the exemption are the machinery, trucks, or hoisting units which are exclusively and permanently used in the transportation of raw material and semiprocessed articles on the premises of the industrial plant, as well as *the equipment used in the packing and labeling of the product* and in the preservation of the latter or of the raw material in the case of perishable articles; *"but it shall not cover"*—says the law—*"the machinery,* apparatuses, equipment, or vehicles *used in the administrative, distributional or commercial stage of the industry."* (Italics ours.)

The function of the productimeters in question is "to count the number of bottles which are filled with beer and the number of bottles which are finally packed." It is clear that such equipment is not used in the packing of the product, for its purpose is precisely *to count* the bottles which are filled, that is, the equipment has nothing to do with the actual botling of the product (beer), but it is an independent equipment which is used to count the bottles which are filled with the product. As to the labeling of the product, the equipment (productimeters) plays no part and has no relation whatever.

We have said time and again that the laws granting tax exemption must be construed restrictively. *Emmanuelli* v. *Sec. of the Treasury*, 76 P.R.R. 889; *Flax* v. *Treasurer*, 76 P.R.R. 365; *School of Commerce* v. *Tax Court; Treas. of P. R., Int.*, 77 P.R.R. 830; *Bacardí Corp.* v. *Tax Court; Sec. of Treas., Int.*, 75 P.R.R. 123; *Descartes, Treasurer* v. *Tax*

*Court,* 73 P.R.R. 830; *Wood* v. *Tax Court,* 71 P.R.R. 216. When there is doubt as to whether or not the law grants an exemption, the doubt must be resolved against the exemption. *Francis* v. *Tax Court,* 74 P.R.R. 18. This doctrine was applied specifically to § 16-B of the Internal Revenue Act, as amended by Act No. 436 of 1947 (Sess. Laws, p. 908), in *Sucn. Serrallés* v. *Tax Court,* 73 P.R.R. 33. We also placed a restrictive interpretation on that section in holding that the equipment used for piling sugar already processed was not covered by the exemption granted by § 16-B. *Fajardo Sugar Co.* v. *Secretary of the Treasury,* 76 P.R.R. 802.

The equipment involved in the case at bar is used or employed in the administrative stage of the industry of the appellant. Therefore, § 16-B of the Internal Revenue Act does not exempt the same from the payment of excises. Nor is it exempted by Excise Tax Regulation No. 69. According to § 4 of that Regulation, the exemption is deemed to cover those "mechanical precision instruments devoted to the *physical control* of manufacturing production, including platform scales . . . and any other devices used to grade the proportions of the raw materials to be processed as well to otherwise weigh, *count* or measure the finished product *at the time of sacking or packing it.*" (Italics ours.)

The productimeters are not used for *counting* the finished product (beer) at the time of bottling. The bottles themselves constitute the accurate physical measure used by the plaintiff-appellee for bottling its product. The productimeters count the bottles which are filled, but they do not control the amount of beer bottled. If the Regulation were interpreted to include in the exemption the equipment used for counting the bottles which are filled, we would have to conclude that that Regulation grants an exemption which is not established by the Act, according to which the exemption covers the equipment used in the packing and labeling of the product and in the preservation of the latter or of the raw material in the case of perishable articles. We have already

said that the productimeters are not used in the packing or in the labeling of the product. And we know that a regulation to be valid can not be in conflict with the norms established in the Act. If so, it is null. *Descartes, Treas.* v. *Tax Court*, 71 P.R.R. 440; *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250; *Buscaglia, Treas.* v. *Tax Court*, 67 P.R.R. 53; *Ex parte Irizarry*, 66 P.R.R. 634; *Villa* v. *Industrial Commission*, 65 P.R.R. 527; *Alemañy* v. *Industrial Commission*, 64 P.R.R. 845; *People* v. *Bou*, 64 P.R.R. 445; *Colón* v. *Tugwell, Governor*, 65 P.R.R. 869.

For the reasons stated, the judgment appealed from should be reversed and another rendered instead dismissing the complaint.